UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

RANDY WILLOUGHBY,

    Plaintiff,

v.                              Case No.: 8:23-cv-1260-KKM-NHA

GOVERNMENT EMPLOYEES
INSURANCE COMPANY,

    Defendant.

_____/

## ORDER

At the close of discovery, Plaintiff Randy Willoughby filed multiple motions to compel documents and testimony from Defendant Government Employees Insurance Company ("GEICO") and its former counsel, Young, Bill, Boles, Palmer, Duke, & Thompson, P.A. ("the Young Firm"). Doc. 96, 99, 100. Then, Defendant moved for a protective order precluding the discovery sought by Plaintiff. Doc. 107. After consideration of these motions, I:

1. Deny Plaintiff's motion to compel documents and testimony from the Young Firm (Doc. 96),

2. Deny Plaintiff's motion to compel documents from the extra contractual file that were withheld by Defendant as privileged (Doc. 99),

3. Grant in part, and deny in part, Plaintiff's motion to compel the production of documents responsive to his first request to produce and his request for copies that Defendant withheld as privileged (Doc. 100); I have reviewed the documents and testimony Plaintiff has provided and order production of documents concerning subject matters over which I find there was no common interest and over which Defendant has waived its privilege, but otherwise deny the motion, and

4. Deny Defendant's motion for a protective order (Doc. 107).

## I.    Background

Plaintiff brings a third-party bad-faith insurance action against Defendant, for allegedly breaching the fiduciary duties Defendant owed to its insured, Alberta Ellison. Doc. 1-1. Plaintiff sued Ms. Ellison in state court, after a car accident in which Plaintiff was injured. *Id.* at pp. 1-2. Prior to trial, Plaintiff made various settlement offers, which Defendant and Ms. Ellison declined. *Id.* at pp. 3-4. Ultimately, the case went to trial and the jury awarded Plaintiff $30 million. *Id.*  at p. 4. Plaintiff now sues Defendant, alleging that Defendant acted in bad faith in declining to settle Plaintiff's lawsuit against Ms. Ellison before trial. *Id.* at pp. 7–8.

Discovery in this case opened on July 5, 2023 (Doc. 22 at p. 1) and closed on May 13, 2024 (Doc. 70 at p. 4). During the discovery period, the parties

periodically litigated motions to quash and compel. *See, e.g.,* Docs. 25, 39, 56, 57, 89. Then, in the final four days of the discovery period, Plaintiff filed four separate motions to compel responses to subpoenas and requests for production, some of which Plaintiff had propounded—and Defendant and third parties had objected to—months prior (*see, e.g.,* Doc. 96 (challenging objections served March 14, 2024)). Docs. 96, 97, 99, 100. With the dispositive-motion deadline looming, Plaintiff also asked the Court to review additional documents *in camera* and allow Plaintiff to reopen a deposition. Docs. 96 (seeking *in camera* review and deposition), 99 (seeking *in camera* review), 100 (seeking *in camera* review).

On June 7, 2024, Plaintiff updated the Court as to the status of the pending motions, reporting that he had "narrowed" the information that he was seeking from Defendant. Doc. 110. Plaintiff attached almost 200 pages of Defendant's privilege logs, highlighted to reflect the hundreds of entries that Plaintiff wished the Court to review. *Id.*

After the close of the discovery period, Defendant moved for a protective order. Doc. 108. The motion sought relief from Defendant's obligation to produce certain documents and testimony that Plaintiff sought to compel. Doc. 108.

Below I address three of Plaintiff's motions to compel (Doc. 96, 99, 100), as well as Defendant's motion for protection (Doc. 107).[1] I have reviewed the motions and their responses, as well as approximately 200 pages of documents and testimony submitted for the Court's consideration in resolving the motions (*see* Doc. 85-1; Doc. 100-2).

## II.    Legal Standard

The Court has "broad discretion under Federal Rule of Civil Procedure 26 to compel or deny discovery." *Josendis v. Wall to Wall Residence Repairs, Inc.*, 662 F.3d 1292, 1306 (11th Cir. 2011). Rule 26(b), which sets out the scope of discovery, provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case." FED. R. CIV. P. 26(b)(1). Nonetheless, Rule 26(b) provides that "the court must limit the frequency or extent of discovery otherwise allowed by these rules or by local rule if it determines that (i) the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity to obtain the information by discovery in the action; or (iii) the proposed discovery is outside the scope permitted by Rule 26(b)(1)." FED. R. CIV. P. 26(b)(2)(C).

---

[1] I previously ruled on the other motion to compel. *See* Doc. 112 (ruling on Doc. 97). Defendant's objection to the order is pending. *See* Docs. 117, 118.

4

And, a party may move for a protective order and a "court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1). Hence, although broad, the scope of discovery is not without limits.

### III.    Summary: The Pending Motions and the Court's Rulings

a. *Plaintiff's Motion to Compel Documents and Testimony of the Young Firm (Doc. 96)*

In the first motion under consideration (Doc. 96), Plaintiff moves to compel the Young Firm to produce materials responsive to subpoenas Plaintiff served on March 1 and March 13, 2024. Docs. 96, 96-1. The Young Firm initially represented Defendant in this case (*see* Docs. 6, 7, 8), but moved to withdraw (Doc. 59), when Defendant decided to assert and advice-of-counsel defense. Defendant intends to assert the defense to explain its refusal of a March 2015 settlement offer. *See* Doc. 56 at p. 21. Specifically, Defendant seeks to rely on the Young Firm's advice that the offer exceeded Defendant's payment obligation under Ms. Ellison's policy. *Id.*

In its motion, Plaintiff asks the Court to review *in camera* the documents that the Young Firm has marked as privileged (Doc. 96-2), find that they are inappropriately characterized, and compel their production. Doc. 96 at pp. 2, 4. Plaintiff also asks the Court to compel production of the Young Firm's billing records. *Id.* at pp. 6–7. Plaintiff further requests that, if the Court compels

5

production of additional documents, it allow Plaintiff to further depose Mr. Young about the documents. *Id.* at p. 7.

Plaintiff's first motion to compel (Doc. 96) asserts three arguments: (1) The documents that the Young Firm claims are privileged are not, in fact, privileged, because they involve business advice rather than legal advice; (2) even if the documents are privileged, that privilege was waived because it relates to Defendant's advice-of-counsel defense; and (3) billing records are not categorically privileged. *Id.* at 9–16. Defendant opposes the motion (Doc. 104), and the Young Firm joins in Defendant's opposition (Doc. 106).

I deny the motion. As explained below, Plaintiff fails to demonstrate a sufficient basis for *in camera* review. To the extent Plaintiff seeks a ruling as to the subject matter of the documents withheld, (1) the Court has already ruled that Defendant may not withhold communications related to business advice, rather than legal advice, so this request is moot, (2) Plaintiff construes Defendant's advice-of-counsel waiver too broadly to support the relief he seeks, and (3) Plaintiff has not sufficiently demonstrated that the additional billing records would be relevant, nor do I find that the request for them is proportional to the needs of the case.

Regarding the deposition request, the Court previously ordered that Mr. Young sit for a deposition and answer questions concerning the amounts paid by Defendant to the Young Firm. Doc. 112 at p. 5. To the extent the relief

Plaintiff seeks overlaps with that already ordered, the motion to reopen Mr. Young's deposition is denied as moot. To the extent Plaintiff also seeks testimony from Mr. Young concerning documents Plaintiff alleges the Young Firm improperly withheld as privileged, the motion is denied as moot, because the Court denies Plaintiff's request to review and recharacterize the withheld documents.

    b.  *Plaintiff's Motion to Compel Documents Responsive to His Eighth Request for Production for Documents from the Extracontractual File (Doc. 99)*

In the next motion under consideration (Doc. 99), Plaintiff asks the Court to compel Defendant's production of documents responsive to Plaintiff's Eighth Request for Production that Defendant asserts are privileged. Plaintiff's request sought all documents, including those from Defendant's extra-contractual file, relating to the underlying accident, claim, and resulting litigation, between November 2, 2012, and August 9, 2019, that had not already been produced. Doc. 99, pp. 2–3. In seeking to compel these documents, Plaintiff repeats its arguments from the first motion (Doc. 96): (1) that the documents are wrongly withheld as privileged, because they relate to claims handling rather than legal advice (Doc. 99 at pp. 7–11); and (2) that, even if the documents are privileged, Defendant has waived privilege by asserting an advice-of-counsel defense (*Id.* at pp. 12–13). Plaintiff also, again, asks the

Court to review *in camera* the documents Defendant withheld. *Id.* at pp. 13–14.

I deny the motion. As explained below, Plaintiff fails to demonstrate a sufficient basis for further *in camera* review. To the extent Plaintiff seeks a ruling as to the subject matter of the documents withheld, (1) the Court has already ruled that Defendant may not withhold communications related to business advice, rather than legal advice, so no further ruling is required, and (2) Plaintiff construes Defendant's advice-of-counsel waiver too broadly; it does not support the relief Plaintiff seeks.

      c.  *Plaintiff's Motion to Compel Documents and Redacted Billing Entries Responsive to Plaintiff's First Request for Production and Documents Responsive to Plaintiff's Request for Copies (Doc. 100)*

In his final motion to compel (Doc. 100), Plaintiff seeks responses to two separate discovery requests. First, Plaintiff seeks 29 documents and 10 redacted billing entries that Defendant has identified as responsive to Plaintiff's First Request to Produce but has withheld as privileged. Doc. 100 at p. 3. Plaintiff argues that the withheld documents are not privileged because (1) they do not include legal advice, or (2) they relate to matters outside the zone of common interest Defendant shared with its insureds, the Ellisons. Doc. 100 at p. 4. Plaintiff further argues that any privileged documents lost their privilege when Defendant both asserted an advice-of-counsel defense and produced other documents disclosing privileged material. *Id.* at p. 5.

8

Second, Plaintiff seeks documents responsive to Plaintiff's Request for Copies—which sought materials that Defendant had subpoenaed from the Ellisons' attorneys. Plaintiff emphasizes the Court's prior ruling that production of the documents to Defendant presumptively waived the Ellisons' privilege over the documents. Doc. 100 at pp. 5–6. The Court previously required that Defendant produce the documents unless it could show "that Ms. Ellison's Attorneys produced copies of their file to Defendant without the Ellisons' knowing waiver of privilege." Doc. 84 at p. 7. Plaintiff says Defendant failed to make the required showing and thus Defendant must produce the documents. Doc. 100 at 5–6 (citing Doc. 84 at p. 7).

I partially grant, and partially deny, the motion.

Again, I find that Plaintiff fails to meet its burden to prompt an *in camera* review; that an order has already been issued requiring disclosure of communications relating to merely business advice; and Defendant's advice-of-counsel defense does not waive privilege as broadly as Plaintiff hopes.

However, I also find that Defendant has waived its privilege over certain subject matters by selectively disclosing privileged materials. Accordingly, I order Defendant to produce documents relating to certain delineated subjects.

As to Plaintiff's request for copies, I find that the Ellisons did not knowingly waive their privilege when their counsel produced the documents to Defendant. However, I find that Defendant must produce copies of any

9

communications on matters outside the zone of common interest (i.e., that were not privileged to begin with) and any documents over which Defendant has waived its privilege by selective disclosure.

### d. *Defendant's Motion for Protective Order* (Doc. 107)

Finally, after the close of the discovery deadline, Defendant moved for a protective order to prevent the disclosure of documents relating to: (1) the financial relationship between Defendant and the Young Firm and (2) documents and communications between Defendant and its counsel, Attorney Young. Doc. 107. Defendant argues that it is entitled to a protective order because (1) Mr. Young is a fact witness rather than an expert witness and thus the financial documents are confidential, and (2) the documents Plaintiff seeks are privileged and not within the scope of the advice-of-counsel defense. *Id.*

I deny the motion. Defendant does not satisfy the standard for issuing a protective order. To the extent the motion re-frames Defendant's opposition to Plaintiff's motions to compel (Docs. 96, 97, 99, 100), its arguments are addressed in the Court's rulings on those orders (*see infra* and Doc. 112).

## IV.   Analysis

Because Plaintiff's arguments in each motion are similar or, in some instances, co-extensive, I address Plaintiff's motions to compel collectively, by argument.

a. *I deny all Plaintiff's motions (Doc. 96, 99, 100), to the extent they seek in camera review of additional documents.*

Plaintiff's first argument, which he makes in all three pending motions to compel, is that the Court should review *in camera* the documents on Defendant's and the Young Firm's privilege logs, because it appears that Defendant is asserting privilege over documents in which counsel gave business advice rather than legal advice. Docs. 96, 99, 100. Defendant and the Young Firm respond that they asserted privilege only over privileged documents. Docs. 104, 106, 108, 109.

Under Florida law,[2] only communications that involve the rendering of *legal advice* are privileged; in the context of a bad faith insurance claim, the privilege does not apply where an attorney is merely investigating a claim, analyzing a coverage issue, or facilitating day to day claims handling activities, for example. *Genovese v. Provident Life & Accident Insurance Company*, 74 So. 3d 1064 (Fla. 2011). Consistent with this, the Court previously ordered Defendant to turn over any communications made for the purpose of rendering business advice rather than legal advice. Doc. 84 at p. 6. Plaintiff suggests Defendant (Docs. 99, 100) and the Young Firm (Doc. 96) continue to wrongly withhold business advice communications.

---

[2] "In a diversity action, state law governs the privileged nature of materials sought in discovery." *In re Fink*, 876 F.2d 84, 85 (11th Cir. 1989) (citing *Somer v. Johnson,* 704 F.2d 1473, 1478 (11th Cir. 1893))

Plaintiff asks the Court to review hundreds of documents that Defendant and the Young Firm have withheld, to assess them for privilege. The decision to review materials *in camera* is left to the sound discretion of the trial court. *United States v. Zolin*, 491 U.S. 554, 572 (1989). The movant bears the burden of justifying an *in camera* review. *See id.* An *in camera* review is not appropriate merely because a party objects to assertions of privilege. *See id.* at 571–572. And, a mere objection, or even a suspicion, is not a basis upon which the parties can shift a burden to the Court that they should bear themselves. *Id.* A Court should only conduct an *in camera* review after the movant provides a sufficient factual basis to support a good faith belief that *in camera* review will reveal improperly withheld material. *Id.* at 572. I find that Plaintiff has not demonstrated sufficient facts to create a reasonable belief that the hundreds of documents it identifies were wrongly withheld.

As to its first motion (Doc. 96) Plaintiff argues that it "appears," based on an April 26, 2024 privilege log (Doc. 96-2), and on the existence of other documents showing that the Young Firm regularly rendered non-legal advice, that the Young Firm has asserted privilege over—and withheld—non-privileged documents. Doc. 96 at p. 11. As to Plaintiff's second motion, relating to Defendant's privilege logs, Plaintiff's argument is even less substantive: He simply points to hundreds of privilege log entries without explaining *what* about those entries suggests that they contain business advice rather than

12

legal advice. Doc. 99 at pp. 8–11. He does the same in his third motion. Doc. 100 at p. 11 (stating only that "it appears . . . in just about all the entries . . . [counsel] w[as] assisting Defendant in the discharge of its ordinary business duties and were providing 'business advice'"); Doc. 110 (not pointing to any specific entries).

After reviewing Plaintiff's arguments and the privilege log entries, I find that Plaintiff has not carried his burden of demonstrating the need for *in camera* review. I therefore deny each motion to compel, to the extent it requests *in camera* review.

> b. *I deny all of Plaintiff's motions (Doc. 96, 99, 100) to the extent they seek—<u>on the basis of Defendant's narrow advice-of-counsel defense</u>—all of Defendant's communications with its counsel relating to settlement offers other than the March 2015 offer.*

In all three pending motions to compel, Plaintiff argues that, even if the documents Plaintiff seeks are privileged, Defendant has waived that privilege by asserting an advice-of-counsel defense. Docs. 96, 99, 100.

When a party asserts an advice-of-counsel defense, the party waives the attorney-client privilege as to the subject matter of that advice. *See Cox v. Adm'r United States Steel*, 17 F.3d 1386, 1417–21 (11th Cir. 1994) ("Courts have found waiver by implication . . . when a client asserts reliance on an attorney's advice as an element of a claim or defense") (citation omitted), *modified in part on other grounds*, 30 F.3d 1347, 1418 (11th Cir. 1994).

13

Privilege is "intended as a shield, not a sword." *Id.* at 1417. Thus, a party asserting an advice-of-counsel defense must produce *all* communications on the subject matter; it cannot introduce evidence of privileged communications to establish defense, while asserting attorney-client privilege for communications that may be unfavorable to the defense. *Id.*

Defendant has specified that it is "relying on its advice-of-counsel for its decision to decline Plaintiff's March 2015 extra-contractual demand for taxable costs," which decision was made on April 16, 2015. Doc. 56 at 21; *see also id.* ("However, for the very limited purpose of explaining its decision to decline to pay any extra-contractual funds in response to Plaintiff's March 2015 extra-contractual demand, Defendant is raising the advice-of-counsel defense to explain why it did not act in bad faith in declining to pay any extra-contractual funds to Plaintiff."). Plaintiff does not dispute this. Doc. 96 at p. 5. Nor does he dispute that Defendant produced documents reflecting that "[Defendant] was relying on the advice of Mr. Young for how to respond to Plaintiff's settlement offer (on or about April 17, 2015) and its decision to continue to offer nothing above $100,000 [in taxable costs] in the months that followed." *Id.*

Plaintiff, however, maintains that Defendant must also produce documents regarding *all* advice that Defendant received from any attorney in connection with settlement discussions. *Id.* at 5–6; Doc. 99 at 12–15; Doc. 100 at 17–18. But Florida law, including that on which Plaintiff relies, is clear that

raising the advice-of-counsel defense as to a specific issue only opens the door to discovery on that issue, and not more broadly to *all* communications. *See Coates v. Akerman, Senterfitt & Eidson, P.A.*, 940 So. 2d 504, 511 (Fla. 2d DCA 2006) ("When attorney-client communications are disclosed regarding a certain matter, there exists a limited waiver with respect to communications *on that same, specific matter*." (emphasis added)); *Paradise Divers, Inc. v. Upmal*, 943 So. 2d 812, 814 (Fla. 3d DCA 2006) ("A party can make a *limited* waiver of its attorney-client or work product privileges in this state." (emphasis added)); *Inmuno Vital, Inc. v. Telemundo Group, Inc.*, 203 F.R.D. 561, 564 (S.D. Fla. 2001) ("[W]hen the advice-of-counsel defense is raised, the party raising the defense must permit discovery of any and all legal advice rendered *on the disputed issue*." (emphasis added)).

Nonetheless, Plaintiff claims it would be "unfair" if he—and the jury—were not told what other advice the Young Firm gave to Defendant about settlement. Indeed, the Courts should consider fairness (i.e., avoiding prejudice to the opposing party) when determining the scope of a waiver of privilege. *See Cox*, 17 F.3d at 1417 ("[C]ourts have generally not found waiver where the party attacking the privilege has not been prejudiced[.]"). A Court should find waiver when it would be "manifestly unfair to the opposing party" to maintain the privilege. *Id.* at 1417 (citations omitted).

Here, Plaintiff suggests that all advice the Young Firm gave Defendant regarding settlement is relevant to whether Defendant acted in bad faith. Doc. 96 at p. 15 (referencing the standard in § 624.155, Fla. Stat.). Moreover, by Plaintiff's logic, other advice given by the Young Firm to Defendant might be probative of whether it was reasonable for Defendant to rely on the Young Firm when the Young Firm advised Defendant that it was not obligated to pay Plaintiff's March 2015 demand for costs. But "[t]he fact that the communications might be helpful to [the opposing party's] claim does not in itself waive the privilege." *See Knox v. Roper Pump Co.*, 957 F.3d 1237, 1249 (11th Cir. 2020). Given that Defendant's advice-of-counsel defense does not extend to all settlement decisions, and given that Defendant represents it will not rely on an advice-of-counsel defense as to any later settlement decision, I do not find it manifestly unjust to allow Defendant to withhold communications with the Young Firm about other settlement offers.

To the extent Plaintiff's motions (Docs. 96, 99, 100) seek to compel Defendant to produce—on the basis of Defendant's advice-of-counsel defense—Defendant's communications with the Young Firm regarding settlement advice unrelated to the refusal of the March 2015 offer, I deny them.

c. *I deny Plaintiff's motions (Doc. 96, 100) to the extent they seek to compel additional billing records.*

Plaintiff also asks the Court to compel the Young Firm to produce its billing records. Docs. 96, 100. In response, Defendant explains that the Young Firm produced billing records related to its advice on whether to pay taxable costs in response to Plaintiff's March 2015 demand. Doc. 104 at p. 16. Defendant maintains that the billing records related to other services rendered by the Young Firm are irrelevant and, even if they were relevant, contain privileged descriptions of legal advice.

The Court has previously found that the amounts paid to Attorney Young may be relevant, given that Attorney Young will be a defense witness in this case. Doc. 112. Indeed, the Court has ordered that he "sit for a continued deposition and answer questions concerning the amounts paid by [Defendant] to the Young Firm." *Id.*

However, Plaintiff bears the burden of showing that the billing records it requests are likewise relevant. *See Stern v. O'Quinn*, 253 F.R.D. 663, 670 (S.D. Fla. 2008) ("Only if [the p]laintiff can satisfy a showing of relevance under Rule 26(b) must the Court consider [the d]efendants' claims of privilege and protection, as well as [the d]efendants' objections to the discovery [the p]laintiff seeks.").

In its first motion to compel (Doc. 96), which seeks bills from the Young Firm, Plaintiff made no argument that the Young Firm's billing records were broadly relevant. The case to which Plaintiff pointed for the proposition that billing records are generally discoverable, *Paton v. Defendant Gen. Ins. Co.*, 190 So. 3d 1047, 1051-52 (Fla. 2016), holds that billing records are discoverable for a party who has demanded attorneys' fees. But Defendant has made no such demand.

In Plaintiff's final motion to compel (Doc. 100), in which Plaintiff seeks billing records from Defendant directly, Plaintiff argues that the billing records are not privileged, but again proffers no argument as to why they are relevant. *Id.* at pp. 18–19.

Accordingly, I decline to find that the billing records, beyond those already produced and relating to Defendant's advice-of-counsel defense, are relevant, or—given the discovery already produced and ordered as to Defendant's billing from and payment to the Young Firm—that the request for the additional billing records is proportional to the needs of the case. I deny Plaintiff's motions (Doc. 96, 100) to the extent they seek to compel production of additional billing records.

    d.  *I deny Plaintiff's third motion (Doc. 100), to the extent it seeks to compel—based on the Ellisons' counsel's unapproved production—copies of all communications between Defendant and the Ellisons' counsel.*

Plaintiff seeks all communications between Defendant and the Ellisons' counsel that Defendant subpoenaed and received from the Ellisons' counsel in this litigation. Doc. 100. Specifically, during this litigation, Defendant subpoenaed various documents from the attorneys who represented the Ellisons in the underlying car accident case (Reynolds Parrino Shadwick, P.A. or Thompson & Miller, P.A.). Doc. 57. The attorneys produced them to Defendant, and Plaintiff requested copies. *Id.* Defendant declined to produce the copies to Plaintiff. *Id.* Defendant asserted that the Ellisons' counsel did not waive the Ellisons' privilege by producing the documents to Defendant, because Defendant and the Ellisons shared a common-interest privilege. Plaintiff moved to compel production of the documents. Doc. 57.

I held a hearing on the motion. *See* Doc. 87. I noted that, because the Ellisons' attorneys produced the documents to Defendant at a time when the Ellisons' and Defendant's interests were diametrically opposed, the Ellisons' attorneys had no reason to believe that the documents were being produced to support the common interest or that the documents would be kept confidential. Doc. 87 at pp. 100–101. In other words, the production of the documents to Defendant waived the Ellisons' privilege over them. So, I conditionally granted

Plaintiff's motion to compel copies, ordering, "No later than April 26, 2024, Defendant shall produce responsive documents [produced by the Ellisons' counsel], barring a showing by Defendant that Ms. Ellison's Attorneys produced copies of their files to Defendant without the Ellisons' knowing waiver of privilege." Doc. 84 at 7.

On April 26, 2024, Defendant's attorney, Gary Guzzi, submitted a notice explaining that he contacted the two law firms who previously represented the Ellisons and who were involved in the potential waiver. Doc. 86 at ¶ 2. The first, the Reynolds firm, represented that it "produced all of those documents without communicating with the insured about a potential waiver of privilege." *Id.* at ¶ 3. The second, the Thompson firm, relayed, through its counsel, that "Attorney Thompson also did not communicate with the insured about the subpoena response or about waiving privilege." *Id.* at ¶ 4.

Plaintiff argues that Mr. Guzzi's representation on this matter is insufficient. Doc. 100. Specifically, Plaintiff argues that Defendant was required to produce admissible evidence that Ms. Ellison's attorneys produced copies of their files to Defendant without the Ellisons' knowing waiver of privilege. *Id.* at pp. 19–21. And, Mr. Guzzi fell short of meeting this burden when Defendant filed a notice that contained several levels of hearsay. *Id.*

The Court's prior order, however, did not specifically require Defendant to make a "showing" in the form of admissible evidence. Here, within four days,

Defendant contacted two different law firms and recounted specific facts based on the lawyers' recollections, as refreshed by their files, to show that the Ellisons were unaware of any potential waiver of privilege. Doc. 86. Mr. Guzzi's submission of this information, in his role as an officer of the Court, is a sufficient showing. Thus, I deny Plaintiff's motion to compel responses to his request for copies (Doc. 100) on *this* basis (that the Ellisons waived their privilege over the documents when their attorneys produced them to Defendant).

      e. *I partially grant Plaintiff's third motion (Doc. 100), to the extent it seeks to compel communications between counsel for Defendant and the Ellisons' counsel that lie outside the zone of common interest (i.e., that were never privileged)*

Plaintiff also argues, in his final motion to compel (Doc. 100), that Defendant improperly withheld correspondence with the Ellisons' counsel and Defendant's counsel that lies "outside the zone" of common interests. Doc. 100 at p. 4. Plaintiff points out that the Court previously ordered Defendant to produce documents and communications made between counsel for the Defendant and for the Ellisons on matters outside of their common interests, that is, outside of the realm in which they would reasonably have expected the communications to be privileged. *Id.* at p. 13 (citing Doc. 84). Plaintiff asserts that four of Defendant's privilege log entries suggest Defendant has withheld such documents. *Id.* at p. 4.

A voluntary disclosure of privileged material waives attorney-client privilege. *Visual Scene, Inc. v. Pilkington Bros., plc.*, 508 So. 2d 437, 440 (Fla. 3d DCA 1987). But courts have recognized an exception to this general rule called the "common interest" doctrine. *Id*. Under the common interest doctrine, information shared with a third party is protected from discovery where all the parties have a "common interest." *Id*. The common interest doctrine applies when the parties have a "joint defense" or have "pooled" their information in support of a defense. *Id*. This doctrine enables litigants who share unified interests to exchange privileged information to adequately prepare their cases without waiving their privilege. *Id*. (citation omitted).

Defendant asserts a "common interest" between itself (the insurer) and the Ellisons (the insured), during the underlying car accident litigation, and it withholds documents sent between its counsel and the Ellisons' counsel on this basis. Plaintiff argues that Defendant has wrongly asserted its common interest privilege over matters on which Defendant and the Ellisons were not aligned. Plaintiff points to four specific entries on Defendant's privilege log that it claims are outside the zone of common interest.

The first document, GLC00404–00405, is described on the privilege log as correspondence that outlines recommendations and options for Ms. Ellison with respect to a potential excess verdict and impact on the Ellisons in the underlying action. Doc. 100-2 at p. 2. The second and third documents,

identified as GLC01363–1395 and GLC 01611–01643, are described by Defendant as correspondence from Ms. Ellison's counsel to Defendant regarding the Ellisons' counsel's evaluation of the case, recommendation and strategy, analysis, and damage exposure. *Id.* at pp. 8–9. The last document contains billing records. *Id.* at p. 11.

Defendant and the Ellisons shared a common interest in defending the underlying action, including by minimizing damages. However, after a verdict exceeding the policy limits—even a hypothetical one—Defendant's and the Ellisons' interests would certainly diverge.   Thus, to the extent that GLC00404–00405, GLC01363–1395, and GLC 01611–01643 contain discussions about the Ellisons' options in the event of an excess verdict, those portions of the communications lie outside the zone of common interest and must be produced. So, to the extent Plaintiff's third motion (Doc. 100) seeks to compel communications between counsel for the Ellisons and Defendant about the Ellisons' options following a potential excess verdict (and, as explained *infra* n. 4, communications with the Ellisons' counsel about the Ellisons' non-cooperation), it is granted.

The last category of documents Plaintiff characterizes as outside the zone of common interest (Doc. 100) are billing records. I addressed separately above whether the billing records are subject to production.

f.  *I grant in part Plaintiff's third motion (Doc. 100) to the extent it seeks to compel documents on subject matters over which Defendant has waived its privilege by "selective disclosure."*

Plaintiff argues in his final motion to compel (Doc. 100) that Defendant has waived his assertion of privilege over certain documents through its selective disclosure of other documents or testimony. Plaintiff previously made this argument, and the Court agreed to review the documents in camera. Doc. 57 (requesting *in camera* review; Doc. 84 (granting *in camera* review); *see also* Doc. 85 (Plaintiff submitting the 51 documents to review *in camera*). Now, Plaintiff reasserts the argument and seeks documents listed in various privilege log entries that he claims are no longer privileged based on Defendant's production of similar, privileged documents. Doc. 100 at pp. 14–16; Doc. 110.[3]

Importantly, Defendant has never attempted to claw back any of the relevant documents or otherwise argued that they were errantly produced. Defendant instead asserts that the documents on which Plaintiff relies (a) fell

---

[3] Plaintiff points to Defendant's production of some of Defendant's own documents and some of the documents Defendant first received from the Ellisons' attorneys, to support his waiver argument. *See* Doc. 100-2 (documents with Bates stamps identifying that they came alternatively from Defendant or from Reynolds Parrino Shadwick, P.A. or Thompson & Miller, P.A.). Defendant previously asserted that it had standing to assert the Ellisons' privilege over the latter documents. *See* Doc. 77. And, while Defendant withheld some documents over which it asserted either the Ellisons' privilege or a common-interest privilege, it disclosed others to Plaintiff.

within Defendant's narrow advice-of-counsel defense, or (b) were not privileged.

The parties agree that if a party chooses to disclose privileged secrets, then he waives his assertion of privilege over those secrets and cannot later rely on the privilege to insist upon his or his attorney's silence. *See Hunt v. Blackburn*, 128 U.S. 464, 470 (1888). The parties disagree, however, over whether Defendant produced privileged documents or testimony and, by doing so, waived its privilege over other documents.

I have reviewed the 51 documents initially submitted for *in camera* review (Doc. 85), as well as the additional 175 pages of testimony and documents submitted in support of the third motion at issue (*see* Doc. 100-2). I find that some of those documents do contain clearly privileged materials, and that Defendant's production of them waived its assertion of privilege, including any common interest privilege with the Ellisons, over certain subjects. *See Visual Scene*, 508 So. 2d at 440 ("Quite obviously, when a member of the common interest group discloses this information to a non-member, a waiver of the privilege, as in the ordinary case, occurs."). Allowing Defendant to rely on these documents while withholding others on the same topic would be improper and unfair. Accordingly, I grant Plaintiff's motion (Doc. 100) to the extent I find Defendant has waived its privilege regarding, and must produce, the following:

25

1.      Based upon Defendant's production of RPS02149–02151, in which the Ellison's counsel assesses the pending case and discusses Defendant's strategy for the February 13, 2015 mediation, and TMPF05588–05589, in which the Ellison's counsel shares the thoughts of counsel and client going into the January 6, 2017 mediation, **communications relating to Defendant strategy for the February 13, 2015 and January 6, 2017 mediations**.

2.      Based upon Defendant's production of TMPF03795, which contains the Ellisons' counsel's impressions of the expert report of John McKay, Ph.D.; TMPF File 07762–07765, which contains a draft report and invoice from Dr. McKay; and TMPF01283–01284, in which the Ellisons' counsel discusses Dr. McKay's testimony; **communications relating to Dr. McKay's opinions, counsel's impression of them, their strategy for using him to minimize damages, and their payment to him**.

3.      Based upon Defendant's production of GLC03753–03755, in which the Ellisons' counsel analyzes damages; TMPF04404, in which the Ellisons' counsel discusses his strategy for using wage information to minimize future lost wages; TMPF01283–01284, in which the Ellisons' counsel discusses Plaintiff's prognosis; and TMPF03825–003826, in which the Ellisons' counsel highlights specific facts about records received in discovery, **communications regarding Defendant's strategy for minimizing damages related to Plaintiff's future earnings**.

26

4.    Based on Defendant's production of TMPF04311, in which Defendant's counsel asks for and receives authorization to hire experts and TMPF03665, in which Defendant authorizes the Ellisons' counsel to hire a private investigator to conduct surveillance on Plaintiff, **communications concerning the retention of experts and a private investigator**.

5.    Based on Defendant's production of TMPF04205, which contains the Ellisons' counsel's impression of Plaintiff's damages, and TMPF01283–01284, in which the Ellisons' counsel assesses Plaintiff's injuries and the anticipated testimony of the defense experts, **communications about Plaintiff's medical bills and strategy for minimizing related damages.**

6.    Based on Defendant's production of TMPF04171–04172, in which the Ellisons' counsel discusses their client's willingness and ability to contribute to the settlement, **communications concerning the Ellisons' potential contribution toward a settlement.**

7.    Based on Defendant's production of TMPF04049–04050, in which the Ellisons' counsel offers impressions of Plaintiff's settlement demand for more than $100,000, **communications concerning Plaintiff's March 2015 settlement demand for more than $100,000**.

8.    Based on Defendant's production of TMPF03942, in which the Ellisons' counsel suggests they will "be cooperative," GLC01105–01106, in which the Ellisons' counsel describes the Ellisons' lack of cooperation, and

TMPF01283–01284, in which the Ellisons' counsel describes the Ellisons' refusal to participate in the lawsuit, **communications concerning the Ellisons cooperation (or lack thereof) with their counsel and participation (or lack thereof) in the lawsuit**.[4]

9.     Based on Defendant's production of TM005617–005618, in which Defendant retains new counsel for the Ellisons, **communications concerning retention of counsel for the Ellisons.**

10.     Based on Defendant's production of TM005615–005616, in which the Ellisons' counsel discusses with Defendant the tendering of the policy limits and the scope of a release, **communications concerning the April 2017 settlement strategy**.

11.     Based on Defendant's production of TM006528, in which the Ellisons' counsel discusses with Defendant his thoughts on the stipulated judgment, assesses damages, and poses a question about moving forward on the stipulation, **communications regarding the Ellisons' counsel's impressions of the stipulation in September 2017**.

12.     Based on Defendant's production of TM05623, in which the Ellisons' counsel discusses his plans to prepare for the upcoming trial,

---

[4] Defendant's communications with the Ellisons' counsel about the Ellisons' non-cooperation also appear to fall outside any common interest privilege.

communications regarding **the Ellisons' counsel's trial preparation strategy beginning in November 2017.**

13. Based on Defendant's production of TM006619, in which the Ellisons' counsel analyzes the reports of Plaintiff's vocational rehabilitation expert, communications regarding **counsel's impressions of Plaintiff's vocational rehabilitation expert reports.**

14. Based on Defendant's production of TMPF005638, in which the Ellisons' counsel suggests that they could not sign the stipulation unless Defendant approved of them doing so, **communications regarding Defendant's requirements before the Ellisons would be permitted to sign the $5,000,000 stipulation proposed by Plaintiff in September 2016.**

15. Based on Defendant's production of TMPF005638 and TMPF005796, in which Defendant asks the Ellisons' counsel about a prior $600,000 proposed stipulation, **communications concerning the relationship between the proposed $600,000 stipulation and the $5,000,000 stipulation**.

16. Based on Defendant's production of YOUNG-ADV000041–48 and US01388–01389, which fall outside of the time frame for which Defendant purports to assert its advice-of-counsel defense (*see* Doc. 84 at p. 5) but includes privileged discussion of whether the policy covers litigation costs, **any**

**communications concerning whether Defendant's scope of coverage included coverage of costs, that relate to any settlement proposal at issue in December 2015.**

g. *I deny defendant's Motion for a Protective Order (Doc. 107)*

Finally, Defendant seeks a protective order "precluding discovery that [Plaintiff] has sought regarding privileged communications between Defendant and its counsel B. Richard Young, Esq. and the Young law firm, as well as confidential information and documentation regarding the history and relationship between the Young firm and Defendant." Doc. 107.

The standard for issuing a protective order is good cause. FED. R. CIV. P. 26(c). To establish good cause, a party must submit "a particular and specific demonstration of fact[,] as distinguished from stereotyped and conclusory statements." *United States v. Garrett*, 571 F.2d 1323, 1326 n. 3 (5th Cir. 1978) (citation omitted).[5] A court may issue an order "to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense." FED. R. CIV. P. 26(c)(1).

In its motion, Defendant does not articulate a specific argument as to why Plaintiff's requests are annoying, embarrassing, oppressive, or unduly

---

[5] In *Bonner v. City of Pritchard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc), the Eleventh Circuit adopted as precedent the decisions of the former Fifth Circuit rendered prior to October 1, 1981.

burdensome or expensive. Defendant simply argues that they are not discoverable. That is not the standard for issuing a protective order.

To the extent I have already denied Plaintiff's motions to compel certain materials, Defendant's motion for protection of those materials is moot. As to the remaining discovery requests from which Defendant seeks protection, I have addressed Defendant's discoverability arguments in ruling on Plaintiff's motions to compel. I deny Defendant's motion for protective order.

### D.    Conclusion

For the reasons stated, I ORDER:

1.    Plaintiff's motion to compel The Young Firm to produce documents responsive to his First and Second Subpoenas (Doc. 96) is DENIED.

2.    Plaintiff's motion to compel documents from the extra-contractual file that were withheld by Defendant as privileged (Doc. 99) is DENIED.

3.    Plaintiff's motion to compel the production of documents responsive to his first request to produce and his request for copies (Doc. 100) is GRANTED, to the extent that Defendant must produce documents or portions of documents that are outside the zone of common interest and/or related to the subject matters identified in this order. The motion is otherwise DENIED.

31

    4.        Defendant's motion for a protective order (Doc. 107) is DENIED.

ORDERED on June 26, 2024.

NATALIE HIRT ADAMS
United States Magistrate Judge